# Carson's Estate.

*Wills—Construction—Trusts—Charitable devises—Income.*

Testator, after making several specific devises, devised his residue in trust, directing that the income be used to pay certain annuities and providing, "As to the balance of the said income, I direct my trustees......to hold and invest the same from time to time until and after the decease of my said wife, and I direct that......accumulated income shall form part of the principal of my estate and shall be held with the principal for the uses"........of the "Carson College for Orphan Girls"; and further directed that after the death of testator's wife the trustees hold the "residue and remainder of my estate (in which shall be included any income accumulated as above directed"......) in trust for the purpose of setting apart from the principal a fund of not less than a million dollars, to be used in the erection of buildings for the college, the fund to be expended from time to time as necessity requires; and further provided that the balance of the estate should be used for the maintenance of the college, and that after the expenditure of the million dollar fund other money necessary for the erection of buildings should come from the income, and in the event of there being a surplus income it should be devoted towards a certain other named charitable object. After the death of the widow and the incorporation of the college, the college and the trustees under the will contended that the income of the trust estate accruing between the time of the widow's death and the opening of the college should be added to the corpus of the trust estate to the use of the college. The lower court held that such income should be held separate and apart from the corpus of the trust estate to await a determination by the trustees whether any part of it might be needed for the maintenance of the college, or might be needed for additional buildings for the college beyond the million dollar building fund, but that after those two objects should have been amply provided for, the surplus should be appropriated for the certain other named charitable object. *Held,* no error.

Argued May 9, 1916.    Appeals, Nos. 149 and 156, Jan. T., 1916, by R. Nelson Buckley and the Real Estate Title Insurance & Trust Company of Philadelphia, Trustees, and the Carson College for Orphan Girls, from decree of O. C. Montgomery Co., Sept. T., 1915, No. 84, dismissing

exceptions to adjudication in Estate of Robert N. Carson, deceased. Before BROWN, C. J., POTTER, MOSCHZISKER, FRAZER and WALLING, JJ. Affirmed.

Exceptions to adjudication.

Robert N. Carson, after making certain specific bequests devised the residue of his estate to the executors of his will, naming them as trustees. From the income he directed that certain annuities be paid, and provided: "As to the balance of the said net income of my said residuary estate, I direct my trustees hereinafter named to hold and invest the same from time to time until and after the decease of my said wife, and I direct that any such accumulated income shall form part of the principal of my estate and shall be held with the principal for the uses, trusts and purposes, as hereinafter set forth in regard to The Carson College for Orphan Girls hereinafter mentioned." ...... "I have long had in my mind the purpose of founding a college for the benefit and education of orphan girls, and have counselled with my beloved wife on the subject. She has taken a warm interest in the project, and aided me with her advice and counsel, my desire being to put in operation a trust for such a college, immediately after the decease of my said wife. I therefore direct the said trustees of this my last will and testament, immediately after the decease of my said wife, to hold the said rest, residue and remainder of my estate (in which shall be included any income accumulated as above directed and all the real and personal estate that I have heretofore given to my said wife during the term of her natural life, saving and excepting, however, that portion which may be disposed of by her under the power of disposition by will, which I have hereinbefore conferred upon her), in trust, for the following uses and purposes": Testator further provided that the trustees should set apart from the principal of the estate a fund of not less than a million dollars to be used in the erection of buildings for the college, directed the incorporation of the col-

lege, and that the said building fund should be expended
from time to time as the number of applicants for ad-
mission to the college might require. Testator further
provided: "After the payment of the remaining annui-
ties hereinbefore directed to be paid, my said trustees
shall pay the balance of the said net income of my estate
to the said corporation quarterly to and for the support,
and maintenance of the said college. Should any ad-
ditional buildings become necessary for the purpose of ac-
commodating those who may apply for admission to the
said college, such buildings must be erected from the in-
come and not from the capital of my estate, so that, in no
event, shall the capital of my estate be diminished by
using any portion thereof for the erection of buildings
upon said ground, beyond the said sum of one million
dollars herein given and appropriated for that object.
Should there be any surplus income after amply pro-
viding for all the necessary buildings and for the support,
maintenance and education of all who may be received in
the said college, I direct that such surplus income shall
be used and appropriated by my said trustees for the pur-
pose of erecting and furnishing dormitories for sick chil-
dren in the various children's hospitals that may be situ-
ated in the City of Philadelphia, in the County of Mont-
gomery, or State of Pennsylvania, to be called "The Car-
son Dormitories for Sick Children."

SOLLY, P. J., filed the following opinion sur exceptions
to the adjudication:

In the adjudication of the second account of the trus-
tees the balance of income was awarded back to them, to
be kept separate from the capital, or principal of the
trust, and to be used and expended by them for the pur-
poses stated in the opinion in accordance with the pro-
visions of the will of the testator. The trustees asked
the court to direct the income to be added to the principal
for the uses, trusts and purposes set forth in the will in
regard to the Carson College for Orphan Girls. They
contended that the testator provided for the accumula-

tion of the income of his estate after the death of his wife, which should become part of the corpus, be reinvested, and the income received from the investments of such new capital or principal used for the college. After a careful and exhaustive study of the will we held that the intent of the testator regarding the disposition of the net income of his residuary estate was manifest, namely, that whatever of such income should remain, after the payment of the annuities, should be invested from time to time until and after the death of his wife, then become part of the principal, a new corpus thereby being made, for the uses, trusts and purposes of the college; that the trustees were then to set apart a fund of not less than $1,000,000.00 from said new corpus, which they were to pay over from time to time to the college to be expended in the erection of buildings. That fund, we said, might aptly be termed the "Building Fund" of the college. We further held that the intention of the testator was plainly manifest as to the disposition of the income of the balance of said new corpus, after the setting apart of said $1,000,000.00; that it was to be paid for the support and maintenance of the college, if required, and, if additional buildings should be needed after the $1,000,000.00 was exhausted, their cost was to be paid from said income; and that after amply providing for the maintenance of the college, and the erection of additional buildings, should there remain a surplus of said income, it was to be applied for the purpose of erecting and furnishing dormitories for sick children in children's hospitals in the City of Philadelphia, County of Montgomery, or State of Pennsylvania, to be called "The Carson Dormitories for Sick Children."

Exceptions to the findings and conclusions of the adjudication have been filed by the trustees under the will, and by the Carson College for Orphan Girls. They relate to the court's interpretation of testator's will. It is said in the first place that the conclusion of the adjudication and the refusal to direct the balance of income shown by

the account to be added to the principal of the trust, is directly contrary to the decree in the adjudication of the first account of the trustees. That is true. But no question concerning the disposition of the income was raised at that time. That adjudication may, or may not be res adjudicata, and we have not been called on to open the decree by a bill of review. That decree affected only the income embraced in that account, and should not now bind the court when the question as to the surplus income shown in the present account is squarely presented for the first time.

It is also said no one opposes the adding of the surplus income to the principal. That is not a good and sufficient reason for the court to make a distribution contrary to the intention of the testator as gathered from the four corners of his will.

The exceptants argue that the award of the income to the trustees, as income, to be kept as such, is in effect directing the trustees to apply it for the purpose of erecting and furnishing dormitories for sick children, the college not being erected and in operation, as yet. We do not so understand. The income is to be held by the trustees for the purposes so carefully stated by the testator; first, for the support and maintenance of the college; secondly, for the erection of additional college buildings, after the $1,000,000.00 "Building Fund" has been exhausted; and, lastly, for the erection and furnishing of children's dormitories, if and only if a surplus remains after amply providing for the college.

I have further studied the will and given the matter the best consideration, and I am unable to satisfy myself that the interpretation of this carefully prepared testament is incorrect, and that the true intent and meaning of the testator have not been gathered.

It is most earnestly contended that the direction to the trustees contained in the fifth clause of the will, to hold and invest the balance of the net income of the residuary estate from time to time "until and after" the decease

of testator's wife, which accumulated income shall form part of the principal of the estate, and be held with the principal for the uses, trusts, and purposes of the college, means that all the net income received after the death of the wife, not paid to annuitants, or for the support and maintenance of the college, is to be added to principal. We cannot believe that was the testator's intention so far as disclosed by his will. The scheme of the will negatives such interpretation. Nowhere in it, except in the direction that the surplus income of his estate during the life of his wife shall accumulate and be added to the principal, forming a new corpus at her death, is there found any expression which can be construed to convey the intent that the income after the death of his wife shall continue to accumulate, and be added to the principal. The trustees· are to hold and invest the balance of the net income up to a prescribed time, until the happening of a certain event, namely, the death of his wife. The language of the will is, "until and after" her decease. That is the time fixed by the testator when a new corpus or principal of the residuary estate shall come into existence. To the principal of the trust as it existed during his wife's lifetime is to be added, at her death, the amount of unexpended and accumulated income then in hand.

That is also the time fixed by the testator when the trust shall be put in operation for the founding and support and maintenance of the college, which he declared had long been in his mind. The trustees are directed "immediately" after the decease of his wife to hold the rest, residue and remainder of the estate, "in which shall be included any income accumulated as above directed," (balance of the net income invested during her life), in trust, first, to set apart therefrom a fund of not less than $1,000,000.00 for college buildings, and, secondly, to pay the net income of the remainder for the support and maintenance of the college, after the payment of annuities, with the provision that the cost of additional neces-

sary buildings be paid thereout. The prime object of testator's bounty, after the death of his wife, is the college for orphan girls, its foundation, the erection of buildings, and its support and maintenance. At all times that is to be amply provided for. The testator had another and secondary object of charity for his bounty, the care of sick children. He foresaw the possibility of the college not needing the whole of the net income of his estate, and he wanted what was unexpended, in that event, to relieve children in sickness. He accordingly expressly directed that "should there be any surplus income after amply providing for all the necessary buildings, and for the support, maintenance and education of all who may be received in the said college," it should be used and appropriated by the trustees for the purpose of erecting and furnishing dormitories for sick children in certain hospitals. The testator has, therefore, in plain and unambiguous language, provided for the disposition of the income of his estate after the death of his wife. After the payment of annuities it is to be applied for the support and maintenance of the college and the erection of additional buildings, when necessary. When they are amply provided for, and a surplus remains, dormitories for sick children are to be erected and furnished. Possibly there will be no surplus income because the entire income may be needed for the college. That is a matter which does not concern us at this time.

It is also contended the testator has not disposed of the net income of the estate until after the college has been completed and in operation, or at least during the period of construction and completion. We fail to find anything in the will which so states, or from which such an inference can be fairly drawn. It is true until the college is completed and in operation there will be nothing to maintain and support, but the income, in the meantime, will be received and in hand ready to be expended for the support and education of the girls. If the position of the exceptants is sound there would be no end to

the accumulations of income, and the testator's express direction that surplus income shall be used and appropriated for the erection and furnishing of children's dormitories could never be carried into effect. One will read through the will in vain to discover the intention, much less the direction, that the income of the estate shall accumulate after the death of his wife. If we should hold that the income is to be added to principal we would be compelled to write into the will such to be testator's intention.

The will is unambiguous. In gathering the intent of the testator we have endeavored to give effect to every word. It seems to us he has disposed of his estate, including the income, in language that is clear, leaving no doubt as to his intention. His directions should be obeyed, and the will fully carried out.

The lower court dismissed the exceptions and confirmed the adjudication. R. Nelson Buckley and the Real Estate Title Insurance and Trust Company of Philadelphia, Trustees, and the Carson College for Orphan Girls appealed.

*Error assigned,* among others, was in dismissing exceptions to the adjudication.

*John C. Bell,* with him *Paxon Deeter* and *Nevill D. Tyson,* for the trustees, appellants.

*Owen J. Roberts,* with him *George Vaux, Jr.,* for The Carson College for Orphan Girls, appellant.

*Irvin P. Knipe,* for George S. Carson and George Cadwallader Carson, intervening appellees, was not heard.

PER CURIAM, May 23, 1916:

The majority of the court are of opinion that the decree of the court below should be affirmed, and it is, therefore, so ordered.

Appeals dismissed at appellants' costs.